

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

**ALD C. MANN**
**MIST GENERAL**

March 13, 1939

Honorable James L. Strawn
County Attorney
Willacy County
Raymondville, Texas

Dear Sir:

Opinion No. 0-380

Re: Should Willacy County remit
its State ad valorem taxes
to Corpus Christi under
Ch. 104, Acts 37th Leg.?
If so, are the taxpayers
of Willacy entitled to the
homestead tax exemption?

You direct our attention to the following facts:

House Bill No. 371, being Chapter 104, page 200 of the General Laws passed by the 37th Legislature, created Kenedy County out of a part of what was then Willacy County. By the same bill Willacy County was then made to embrace a large portion of what was theretofore Cameron County and Hidalgo County plus the small amount of Willacy County not incorporated into Kenedy County.

Senate Bill No.330, being Chapter 138, page 270 of the General Laws passed by the same Legislature, provided in part as follows:

"Section 1. That for a period of twenty-five years commencing with the fiscal year, beginning September 1, 1921, there be and hereby are donated and granted by the State of Texas, to the City of Corpus Christi the net amounts of all State ad valorem taxes collected upon the property and from persons in counties of Jim Wells, Jim Hogg, Brooks, Kelberg, Willacy and Duval and all the net amounts of all State ad valorem taxes collected upon the property and from persons in the County of Nueces not heretofore donated to the City of Corpus Christi by

576

Act of the Thirty-fifth Legislature of the State of
Texas known as House Bill No. 694, including such
State ad valorem taxes as may be due said counties on
the railroading stock belonging to railroad companies
which shall be ascertained and apportioned to said coun-
ties as now provided by law.

"Sec. 2.  At the end of each month the collector of
taxes for Nueces, for Jim Wells, for Jim Hogg, for Brooks,
for Kleberg, for Willacy and for Duval counties shall,
on forms to be furnished by the Comptroller of Public
Accounts, make itemized reports, under oath, to said
Comptroller, showing each and every item of State ad
valorem taxes collected by them respectively, as pro-
vided for in this Act, upon property and from persons
within said counties including said railroading stock
belonging to railroad companies, and accompany the same
with a summarized statement showing full disposition of
all such State taxes collected; each of said collectors
shall present their respective reports together with the
tax receipt stubs, authorized by law to be kept, to the
County Clerk of his county, who shall, within two days,
compare said report with the said stubs, and if the same
agree in every particular, as regards names, dates, and
amounts, said clerk shall certify to its correctness, for
which examination and certificate he shall be paid by the
Commissioners' Court of his county twenty-five cents for
each certificate and twenty-five cents for each two hundred
taxpayers on said report.  The said collectors of Jim
Wells, Jim Hogg, Brooks, Kleberg, Willacy, Duval and
Nueces counties shall then immediately forward their
respective reports so certified to the Comptroller and
shall pay over respectively to the City Treasurer of
the City of Corpus Christi all moneys collected by them
or either of them, during said month, under the provisions
of this Act, from said counties, except such amounts as
are allowed by law for assessing and collecting the same,
and said collectors shall forward a duplicate copy of the
receipts given to them respectively by the Treasurer of
the City of Corpus Christi for such moneys to the Comp-
troller.

*  *  *

"Sec. 6.  The moneys herein and hereby granted and
donated to the City of Corpus Christi are declared to
be a trust fund, for the purpose of aiding the City of
Corpus Christi in paying the interest and sinking fund
upon an issue or issues of bonds, the proceeds of which
bonds are to be used exclusively for the construction of
a sea wall or breakwater so as to protect said city from
calamitous overflows. . . ."

Hon. Charles R. Johnson, March 10, 1939, Page 4.


It therefore appears that both statutes were enacted at the same session of the 37th Legislature. House Bill No. 371 was enacted first, became law and was effective first. If either bill has any advantage of prior enactment, it goes to House Bill No. 371, creating Kenedy County.

We are clearly of the opinion that it must be construed that the Legislature meant to donate to Corpus Christi the State's share of ad valorem taxes thereafter for the next twenty-five years collected in the newly formed Willacy County. The bill creating Kenedy County was before it during most of the time it was considering the other bill. Surely if the Legislature had meant to deliver the ad valorem taxes collected in Kenedy County to Corpus Christi, it would have said so. Furthermore, it would have been extremely unlikely that the Legislature would have enacted the laws in such condition and with the intention that the State's share of ad valorem taxes collected off a 1.5 mile strip of land in Willacy County should go to Corpus Christi and the State retain the balance.

There would be a certain repugnancy between the two Acts if we should construe the term "Willacy County" as used in Senate Bill No. 330 as referring to old Willacy County. For we would find the greater part of such territory lying in Kenedy County and with no mandate for the Kenedy County taxes to be delivered to Corpus Christi. We would have in the new Willacy County only a small part of old Willacy County whose taxes should be so used. And Senate Bill No. 330 commands the tax collector of Willacy County to pay to Corpus Christi all moneys collected by him under the Act in Willacy County.

Acts passed at the same session of the Legislature are generally construed together, as one Act, where they cover the same subject matter. Lovett v. Simmons, 29 S. W. (2) 1021; Rosebud Ind. Sch. Dist. v. Richardson, 2 S. W. (2) 513; O'Keefe Eudapeth Co., 25 S. W. (2) 625; McGrady v. Terrell, 84 S. W. 641; 39 Tex. Jur. 258-260. If two acts passed at the same session are in irreconcilable conflict, the one last enacted will control. 39 Tex. Jur. 260; Ex p. Nitsche, 170 S. W. 1101. Perhaps these two Acts are not in conflict. However, one construction would create an exceedingly confusing condition, such that we think the above principles would be applicable. It is our opinion that the State's ad valorem taxes collected in the new Willacy County must be awarded to Corpus Christi, and we answer the first question in the affirmative.

We arrive now at the second question regarding the right of the people of Willacy County to claim the homestead exemption. It will be noted that nothing in Senate Bill No. 330 required the State to thereafter continue the collection of taxes on the same property that was then being taxed. Nothing in said Act bound the State to deny to the citizens of the counties therein affected any exemption which might thereafter be created as to ad valorem taxes. The grant was simply of the "net amounts of all State ad valorem taxes collected" in certain counties, without any warranty as to what taxes would be collected. By the grant Corpus Christi got only the State's share of ad valorem taxes which should be collected in certain counties for a designated time. Of course any contracts which it may have made or any bonds issued could not and we are sure did not attempt to enlarge such grant.

The exception to the homestead exemption provided by Article 8, Section 1a, Constitution of Texas, does not apply to the case under consideration. The exception reads: "provided that this exception shall not be applicable to that portion of the State ad valorem taxes levied for State purposes remitted within those counties . . . now receiving any remission of State taxes." These taxes are neither remitted within Willacy County by Senate Bill No. 330, nor is Willacy County now receiving any remission. The State's share of the taxes which Willacy County pays (and the same as to the other counties affected by the Bill) are not remitted within and received by Willacy County. On the other hand, the same is taken from Willacy County by the State and delivered to the City of Corpus Christi. The exception created by Article 8, Section 1a, to the exemption therein extended, was clearly meant to apply to those counties, and there are several of them, which were receiving a remission of their own taxes.

The citizens of Willacy, Jim Wells, Brooks, Kleberg, Duval and Nueces Counties are entitled to the exemption provided in said Article 8, Section 1a, of the Constitution, and our answer to your second question is an affirmative one.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Glenn R. Lewis
Glenn R. Lewis
Assistant

GRL:R

APPROVED

ATTORNEY GENERAL OF TEXAS